UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-CR-10459-RWZ |
| | ) | |
| FRUTUOSO BARROS | ) | |

**Sentencing Memorandum**

Defendant Frutuoso Barros submits this memorandum to assist the court in arriving at a reasonable sentence that is sufficient and not greater than necessary to promote all statutory sentencing goals. For the reasons set forth below, the court should start with a sentence at the low end of the properly calculated advisory Sentencing Guidelines of 168 months.

From there, the court should adopt the position of the parties and the Probation Office that the offense described in ¶ 140 of the Presentence Report, Essex County Superior Court Docket No. 1377CR01393 (the "Essex Case"), is relevant conduct that is fully reflected in the advisory Sentencing Guidelines calculation. The court should also adopt the parties' joint position that the Bureau Of Prisons will not credit the 41.5 months Mr. Barros already has served for the Essex Case and that the sentence the court deems appropriate should be reduced by 41.5 months. Accordingly, Mr. Barros requests that the court impose a sentence of 126.5 months (168 months less 41.5 months served).

Finally, the court should adopt the position of the parties and order that the sentence the court imposes shall commence on the date of sentencing and shall run concurrently with the remainder of the undischarged term of imprisonment for the Essex Case pursuant to the court's inherent sentencing authority and USSG § 5G1.3(b)(2).

**Argument**

1. **The Court Should Effectuate the Parties' Intention That the Sentence In This Case Should Not Result In Mr. Barros Serving Additional Time After Completing the Sentences Imposed In the Essex Case**

The driving premise of the Plea Agreement between Mr. Barros and the government is the parties joint intention that "[t]he sentence this court imposes should not result in the Defendant serving additional time after he completes the sentences imposed in" the Essex Case. Plea Agreement at p. 4. In that case, the court imposed the 20-year maximum sentence for conspiracy to commit murder followed by a consecutive four to five-year sentence for conspiracy to commit assault and battery with a dangerous weapon. *See* PSR at ¶ 140.

The parties' intention is based on the sound rationale that the 24 to 25-year sentence imposed in the Essex Case is more than reasonable and is not more than necessary to achieve all federal sentencing goals for all of the conduct to which Mr. Barros has pleaded guilty.

There is no doubt that the criminal conduct in the Essex Case is relevant conduct in this case. The government has alleged here that Mr. Barros, a long-standing member of the Latin Kings, conspired with other members of that group to carry out racketeering acts from at least 2009 to the date of indictment. *See* Indictment at ¶ 7. The 2014 criminal conduct underlying the Essex Case - conspiring with other Latin Kings to meet out discipline on renegade or rogue members - is squarely within the charged purposes of the enterprise in this RICO case. *Compare* Indictment at ¶ 5i, ("The purposes of the LATIN KINGS enterprise included the following: … i. Ensuring discipline within the enterprise and compliance with the enterprise's rules by members and associates through threats of violence and acts of violence"); PSR at ¶ 140 (purpose of Essex

Case conspiracies were to "terminate" two members who were "running renegade" and were "not following the rules set out in the Latin Kings manifesto").

A federal sentence that does not result in additional incarceration beyond the sentence imposed in the Essex Case is more than adequate punishment for all of the jointly undertaken criminal conduct in which Mr. Barros engaged as a member of the Latin Kings. The state sentences actually exceed the federal RICO statutory 20-year maximum.

A federal sentence that does not exceed the state sentence also will serve the sentencing goals of general and specific deterrence. The message the court will send to the community at large is that a 24 to 25-year sentence is what to expect for engaging the type of behavior Mr. Barros engaged.

Mr. Barros is extremely unlikely to reoffend. He will be 40 years old next March. He will have spent half his life behind bars. *See* PSR at ¶¶ 136-140. He will be nearing 50 years old at the conclusion of the sentence he has asked this court to impose. He will have by many years aged out of the type of criminal behavior engaged in by Latin Kings members.[1]

With age, comes wisdom. Sometimes.[2] It has here. Mr. Barros realizes that what he thought was important, the Latin King "family" he was part of, and the behavior he engaged in, are not what should have been important. He feels remorse for and regrets his criminal conduct. He has recognized that he needed to change his behavior and has vowed to become a better

---

[1]     If Mr. Barros were to reoffend after release from prison, he could be sent back for the rest of his life. He was convicted in the Essex Case of armed home invasion, which carries a life sentence, and was sentenced to five years probation commencing upon his release from prison. He could receive the maximum penalty for that offense if he were to violate the terms of his probation. *See Commonwealth v. Goodwin*, 458 Mass. 11, 15 n.5 (Mass. 2010).

[2]     "With age comes wisdom, but sometimes age comes alone." Oscar Wilde.

3

person. He took a major step in 2019 when he formally resigned from the Latin Kings. *See* PSR at ¶ 178.

Like many of his brethren, Mr. Barros fell into the Latin Kings as a result of a dysfunctional and difficult home life. As a substitute for his absent father, and as the eldest of his mother's six children, a very young Mr. Barros took on the role of provider for the needs of his brothers and sisters. At 13, he took to the streets to better provide for them, making sure that birthdays and Christmas could be celebrated. He was devastated when his younger brother Frankie was shot and killed after Mr. Barros, then 19, made a quick trip to the store leaving Frankie alone. Mr. Barros has never gotten over the guilt and grief from the loss of his brother. *Id*. at ¶ 156.

Mr. Barros' development was further complicated by the mental health conditions described in the PSR at ¶¶ 175-178. As a young child of 13, Mr. Barros found solace and brotherhood on the streets in the Latin Kings community. *Id*. at ¶ 178. He has matured enough to know that this was not the answer and that appropriate help is available elsewhere.

Mr. Barros has modest, achievable goals once he is released. He hopes to get a commercial driver's license, drive a tow truck, and hopefully build that into his own business. *Id*. at ¶ 183. He realizes that it is not too late to make up for the lost time in his life and is determined to do so.

**2.     The Court Should Reduce the Sentence It Imposes By 41.5 Months, Start the Federal Sentence On July 8, 2021, and Impose the Federal Sentence To Run Concurrently With the Undischarged Term Of the Sentence In the Essex Case**

The vehicle for ensuring that the parties' joint intention that Mr. Barros' federal sentence does not run past the end of his sentence in the Essex Case is to: (1) adjust downward the sentence this court deems appropriate by the amount of time Mr. Barros has served for the Essex Case up to the July 8 sentencing date in this court; (2) state in the judgment that the sentence in this case commences on July 8, 2021, the date of sentencing; and (3) state in the judgment that the adjusted sentence in this case shall run concurrently with the undischarged term of the sentence left to serve in the Essex Case as of July 8, 2021. Mr. Barros and the government jointly request that the court do so. *See* Plea Agreement at p. 4.

Because the court in the Essex Case ordered that the sentences it imposed did not begin to run until Mr. Barros completed a sentence he was serving for a conviction in Florida, the sentences in the Essex Case did not begin to run until January 24, 2018. *See* PSR at ¶¶ 139-140 and p. 2. From that date until the July 8, 2021 sentencing date in this court, Mr. Barros will have served a total of 1,262 days (41 months and 15 days) for the offenses in the Essex Case.

The parties agree that the court should adjust the federal sentence downward by 41.5 months rather than crediting that time against the federal sentence. By statute, the court is precluded from crediting time already credited to another sentence. *See* 18 U.S.C. § 3585(b) ("[a] defendant shall be given credit towards the sentence of a term of imprisonment for any time spent in official detention prior to the date the sentence commences … that has not been credited against another sentence"). BOP policy tracks the statutory directive. *See* Federal Sentencing

Computation & Interaction Of Federal and Non-federal Sentences, available at https://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2017/BOP_FSS.pdf ("Section 3585(b) prohibits prior custody credit when the time in custody was awarded towards another sentence"). *See also* Interaction Of Federal and State Sentences When the Federal Defendant Is Under State Primary Jurisdiction, available at https://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2010/014a_OGC_Memo_Sadowski.pdf ("the general rule is no credit is afforded towards a federal sentence if credit has been given for the same period of custody towards a state sentence"). The BOP will not honor a judicial directive to credit time served on another sentence against a federal sentence. *See* Federal Sentencing Computation, *supra* ("[a]ny reference in the Judgment and Commitment order to credit for time served is unnecessary and superfluous, and directly contrary to *United States v. Wilson*, 503 U.S. 329 (1992)").

The BOP advises that where the court finds that an adjustment is necessary, "it is crucial for the Judgment and Commitment order to delineate exactly how the court determined the sentence." *Id*. The reason for and the amount of the adjustment should be noted on the Judgment and Commitment order. *See Id*. ("[t]his reference assists the BOP in resolving issues concerning the court's intent, which issues often arise years after the sentence was imposed)."

The parties further agree that the court should state in the judgment that the sentence in this case commences on July 8, 2021, the date of sentencing. Otherwise, the federal sentence will not commence until Mr. Barros completes his 24 to 25-year state sentence and physically arrives at a federal institution. *See* 18 U.S.C. § 3585(a) (a federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence

service of sentence at, the official detention facility at which the sentence is to be served." BOP policy tracks the statute. *See* Federal Sentencing Computation, *supra* ("The underlying principle of § 3585(a) is that a federal sentence commences when the defendant is received by the United States for the purpose of serving a federal sentence") (footnote omitted). *See also* Interaction Of Federal and State Sentences, *supra* ("a federal sentence commences when the defendant is received by the Attorney General of the United States for service of his federal sentence") (footnote omitted).

Finally, the parties agree that the court should state in the judgment that the adjusted sentence in this case shall run concurrently with the undischarged term of the sentence left to serve in the Essex Case as of July 8, 2021. Otherwise the BOP will determine that the federal sentence runs consecutively. *See* Federal Sentencing Computation, *supra* ("[i]f the federal judgment and commitment order is silent and if the state authorities have primary jurisdiction over the defendant, the default by the BOP is to compute the federal sentence as consecutive with the state sentence").

**3.     The Sentence Mr. Barros Seeks Is Consistent With Properly Calculated Advisory Sentencing Guidelines**

Mr. Barros agrees with the government's calculation of a total offense level after acceptance of responsibility of 34. The court should not adopt the Probation Office's calculation of a total offense level of 37. For the reasons set forth in Mr. Barros' objections to the PSR, the Probation Office has applied the advisory guidelines grouping principles incorrectly by treating as two separate conspiracies a single conspiracy to commit two murders. Mr. Barros agrees with

the government that this conduct constitutes a single group and that no increase in the offense level is warranted because all of the other groups are nine levels or more below level 33.

Mr. Barros also has objected to the Criminal History calculation in the PSR. For the reasons set forth in Mr. Barros' objections, the three prior offenses described in ¶¶ 136-138 should be considered relevant conduct. The offenses involve larceny, armed robbery, possession of a controlled substance and possession of firearms. All of these offenses are within the scope of criminal conduct in which the Latin Kings RICO enterprise engaged. *See* Indictment at ¶ 8.

The Probation Office has not agreed to treat these offenses as relevant conduct because they predate the 2009 charged conspiracy. The indictment reflects, however, that the 2009 date is not the actual beginning of the charged RICO conspiracy. It alleges that the defendants conspired with one another to conduct and participate in the affairs of a RICO enterprise "from a time unknown to the Grand Jury, but not later than approximately April 2009." Indictment at ¶ 7. The Indictment expressly leaves open that the defendants certainly could have acted in concert as part of an enterprise prior to 2009.

Surely the alleged "enterprise" - the Latin Kings - existed prior to 2009. *See* Affidavit of Special Agent Dominic Coppo, Dkt. No. 12-1 at ¶ 8 "[t]he LATIN KINGS was formed in the 1960's in Chicago"). Mr. Barros' membership in the Latin Kings also predates 2009. *See* PSR at ¶ 178 (Mr. Barros joined in 1995). More than a few of Mr. Barros' codefendants likely also have been members of the enterprise along with Mr. Barros prior to 2009. Mr. Barros is not privy to their Presentence Reports. Once the offenses in ¶¶ 136-138 are properly considered relevant conduct, Mr. Barros is in Criminal History Category II and the advisory Sentencing Guidelines

**Conclusion**

For all of the foregoing reasons, a reasonable sentence for the offense of conviction is 168 months. Because the Essex Case is relevant conduct, the court should adjust the 168-month sentence downward by the 41.5 months Mr. Barros already has served, the resulting 126.5 month adjusted federal sentence in this case should be deemed to commence on the date of sentencing, and the court should order that the federal sentence shall run concurrently with the undischarged portion of the sentence in the Essex Case.

FRUTUOSO BARROS
By his attorney,

/s/ *E. Peter Parker*
E. Peter Parker
B.B.O. #552720
151 Merrimac Street
Boston, MA  02114
(617) 742-9099

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 6, 2021.

/s/ *E. Peter Parker*
E. Peter Parker